1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   TERRI SEBASTIAN,

11              Plaintiff,                    No. CIV S-07-2746 GGH

12        vs.

13   MICHAEL J. ASTRUE,                  ORDER

14   Commissioner of
     Social Security,

15              Defendant.

16   _____/

17              Plaintiff seeks judicial review of a final decision of the Commissioner of Social

18   Security ("Commissioner") denying her application for Supplemental Security Income ("SSI")

19   under Title XVI of the Social Security Act ("Act").  For the reasons that follow, plaintiff's

20   Motion for Summary Judgment is DENIED, the Commissioner's Cross Motion for Summary

21   Judgment is GRANTED, and the Clerk is directed to enter judgment for the Commissioner.

22   BACKGROUND

23              Plaintiff, born January 30, 1957, applied on February 25, 2005 for disability

24   benefits.  (Tr. at 55.)  Plaintiff alleged she was unable to work due to substance

25   addiction/dependence disorders and depressive disorder.  (Tr. at 37, 15.)

26   \\\\\

                                            1

In a decision dated July 27, 2007, ALJ Peter F. Belli determined plaintiff was not disabled.  The ALJ made the following findings:[1]

> 1.  The claimant has not engaged in substantial gainful activity since February 25, 2005, the application date (20 CFR 416.920(b) and 416.971 *et seq.*).
>
> 2.  The claimant has the following severe impairments: depressive disorder with psychotic features and substance abuse disorder (20 CFR  416.920(c)).
>
> 3.  The claimant's impairments, including the substance use disorder, meet section 12.09 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d)).
>
> 4.  If the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments.

[1]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:
> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.
Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

5.   If the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d)).

6.   If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform work activity at all exertional levels that did not involve detailed decision-making.

7.   If the claimant stopped the substance use, the claimant would be able to perform her past relevant work as a home health aide.  This work does not require the performance of work-related activities precluded by the residual functional capacity the claimant would have if she stopped the substance use (20 CFR 416.965).

8.   Because the claimant would not be disabled if she stopped the substance use (20 CFR 416.920(f)), the claimant's substance use disorder is a contributing factor material to the determination of disability (20 CFR 416.935).  Thus, the claimant has not been disabled within the meaning of the Social Security Act at any time from the date the application was filed through the date of this decision.

(Tr. at 15-22.)

In summary, the ALJ found that plaintiff's substance abuse was not only severe but met the criteria for a listed impairment[2] and was a contributing factor material to any other finding that plaintiff is disabled.[3]  If substance abuse were eliminated from the picture, the ALJ

---

[2]  It remains a curiosity that the Commissioner retains Listed Impairment 12.09 (presumptive impairment based upon substance abuse disorders) since Congress has determined that substance abuse is not a basis for disability.  However, as this court has previously noted, the problem may be more theoretical than real because Listing 12.09 incorporates listed impairments for other mental disorders.  In fact, Appendix 1 specifically states: "[l]isting 12.09 is structured as a reference listing; that is, it will only serve to indicate which of the other listed mental or physical impairments must be used to evaluate the behavioral or physical changes resulting from regular use of addictive substances."  20 C.F.R. Pt. 220, App. 1, § 12.00.A.

[3]  In 1996, Congress amended 42 U.S.C. § 423 to eliminate drug and alcohol abuse as bases for finding disability.  See Contract With America Advancement Act of 1996 § 105, 42 U.S.C. § 423(d)(2)(C) ("An individual shall not be considered to be disabled for the purposes of this subchapter if alcoholism or drug abuse would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled.")  The ALJ herein followed the appropriate analysis for determining whether alcoholism or drug abuse is a contributing factor

3

1  found that plaintiff's remaining mental impairment was severe, but permitted her to do her past

2  work as a home health aide.

3  ISSUE PRESENTED

4          Plaintiff has raised the following issue: Whether the ALJ Failed to Consider the

5  Opinion of the Treating Doctors.

6  LEGAL STANDARDS

7          The court reviews the Commissioner's decision to determine whether (1) it is

8  based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in

9  the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999).

10  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v.

11  Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence

12  as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d

13  625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ

14  is responsible for determining credibility, resolving conflicts in medical testimony, and resolving

15  ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).

16  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one

17  rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

18  ANALYSIS

19          Plaintiff contends that the opinions of her treating physicians, including those at

20  Molina Medical Clinic, Yolo County Jail, Yolo County Alcohol Drug and Mental Health (Drs.

21  Caldwell, Hudson, and Graman), California Department of Corrections, and the Parole Clinic

22  (Drs. Dr. Sett and Sebastian, and Anne Thurston), were not considered by the ALJ.

23

24  material to the determination of disability, as set forth in Bustamante v. Massanari, 262 F.3d 949
(9th Cir. 2001); see also, 42 U.S.C. S 423(d)(2)(C); 20 C.F.R. §§ 404.1535(a), 416.935(a).  The
ALJ first determined, pursuant to the Commissioner's five-step inquiry, whether plaintiff is

25  disabled when the impact of substance abuse is considered.  Only after finding plaintiff disabled
did the ALJ determine whether the applicant would still be disabled if she stopped using drugs or

26  alcohol.

1    The weight given to medical opinions depends in part on whether they are

2  proffered by treating, examining, or non-examining professionals.  Holohan v. Massanari, 246

3  F.3d 1195, 1201 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).[4]  Ordinarily,

4  more weight is given to the opinion of a treating professional, who has a greater opportunity to

5  know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th

6  Cir. 1996).

7    To evaluate whether an ALJ properly rejected a medical opinion, in addition to

8  considering its source, the court considers whether (1) contradictory opinions are in the record;

9  and (2) clinical findings support the opinions.  An ALJ may reject an *uncontradicted* opinion of

10  a treating or examining medical professional only for *"clear and convincing"* reasons.  Lester ,

11  81 F.3d at 831.  In contrast, a *contradicted* opinion of a treating or examining professional may

12  be rejected for *"specific and legitimate"* reasons.  Lester, 81 F.3d at 830.  While a treating

13  professional's opinion generally is accorded superior weight, if it is contradicted by a supported

14  examining professional's opinion (supported by different independent clinical findings), the ALJ

15  may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing

16  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  The regulations require the ALJ to

17  weigh the contradicted treating physician opinion, Edlund v. Massanari, 253 F.3d 1152 (9th Cir.

18  2001),[5] except that the ALJ in any event need not give it any weight if it is conclusory and

19  supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999)

20

21    [4]  The regulations differentiate between opinions from "acceptable medical sources" and
"other sources."  See 20 C.F.R. §§ 404.1513 (a),(e); 416.913 (a), (e).  For example, licensed
22  psychologists are considered "acceptable medical sources," and social workers are considered
"other sources."  Id.  Medical opinions from "acceptable medical sources," have the same status
23  when assessing weight.  See 20 C.F.R. §§ 404.1527 (a)(2), (d); 416.927 (a)(2), (d).  No specific
regulations exist  for weighing opinions from "other sources."  Opinions from "other sources"
24  accordingly are given less weight than opinions from "acceptable medical sources."

25    [5]  The factors include: (1) length of the treatment relationship; (2) frequency of
examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis;
26  (5) consistency; (6) specialization. 20 C.F.R. § 404.1527

1    (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes,

2    881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is

3    insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

4            The ALJ chose to give weight to Dr. Canty, a consulting psychiatrist, who

5    examined plaintiff on August 30, 2005, at the request of the SSA.  This doctor first noted that

6    there were no psychiatric records.  (Tr. at 155.)  Plaintiff reported that she had been arrested

7    numerous times, all relating to drug use.  She has used methamphetamine since the 1980s and

8    last used it two weeks earlier.  She last drank alcohol the day before the exam.  (Tr. at 156.)  The

9    mental status exam indicated clear speech and content of thought which was coherent, logical

10   and goal directed.  Although she described hearing voices, plaintiff's description was matter of

11   fact, and she did not appear upset.  Mood was happy with full affect.  Plaintiff was oriented with

12   good fund of knowledge.  Her responses to questions testing for intellectual functioning and

13   sensorium were appropriate.  (Id. at 157.)  Diagnosis was methamphetamine dependence,

14   intermittent methamphetamine induced psychosis, and alcohol abuse.[6]  GAF was 55/60 due

15   entirely to drug abuse.[7]  Dr. Canty specifically stated that plaintiff does not have schizophrenia or

16   bipolar disorder.  He addressed her mental health situation relative to her drug/alcohol use:

17               Her presentation was pathopneumonic for long-standing
               methamphetamine dependence.  I suspect she has presented to
18               mental health with various psychotic diagnoses over the years.  The
               fact that she remains on Prolixin leads me to believe that her
19               psychiatric providers have not reviewed her diagnosis in many
               years.  She appears to be on medication autopilot.  Her
20               methamphetamine induced psychotic symptoms will continue as
               long as she continues to use.  However, she currently does not

21

22        [6]  The long term effect of methamphetamine use includes mental illness such as the type
     diagnosed for plaintiff: depression, hallucinations, and "methamphetamine psychosis, a mental
23   disorder that may be paranoid psychosis or may mimic schizophrenia."  www.kci.org.

24        [7]  GAF is a scale reflecting the "psychological, social, and occupational functioning on a
     hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental
25   Disorders 32 (4th ed.1994) ("DSM IV").  According to the DSM IV, a GAF of 51 - 60 indicates
     moderate symptoms such as flat affect, circumstantial speech, occasional panic attacks, or
26   moderate difficulty in functioning as in few friends or conflicts with peers or co-workers.

1   complain of functional deficits regarding her psychotic symptoms.
2   She was extremely organized today and has coherently organized
    her legal defense regarding her most recent drug charge.  She has
3   navigated the social systems well, which points to her strengths.
    She has had numerous episodes of mandated treatment to no avail
4   and her prognosis for becoming clean and sober is poor.

5   (Id. at 158.)

6          Dr. Canty thought plaintiff could do any number of simple, repetitive jobs and that

7   only her substance abuse was preventing her from doing so.  This psychiatrist thought plaintiff

8   was quite intelligent, and opined that "[s]he does not have psychiatric symptoms separate from

9   drug abuse that would prevent her from attending or completing simple work."  (Id.)

10         Dr. Canty appropriately described the state of plaintiff's medical care when he

11  opined that her psychiatric providers had not reviewed her diagnosis in several years, and that her

12  prescription for Prolixin qualified as "medication autopilot."

13         In addition to Dr. Canty, the ALJ also relied on the non-examining opinions of the

14  SSA physicians who agreed with Dr. Canty.  Dr. Schnitzler opined that "with sobriety, claimant

15  should be able at least to perform [simple repetitive tasks].  (Tr. at 162.)  Dr. Hilliard thought that

16  although plaintiff abused alcohol and methamphetamines, her mental status was normal.  (Id. at

17  190.)

18         The records cited by plaintiff  were not rejected by the ALJ and in fact were not

19  addressed by him other than a reference in passing to "a history of treatment through the Yolo

20  county clinic system and the Department of Corrections for drug and alcohol usage and mental

21  problems."  (Tr. at 15.)  He noted only that these unnamed practitioners had diagnosed depressive

22  disorder with psychotic features, and that there was a lack of ongoing care for plaintiff's mental

23  problems.  (Id. at 15, 20.)  The ALJ did not specifically reject these other sources because they

24  did not provide an opinion as to whether plaintiff's substance addiction was a material factor

25  contributing to her disability or opine as to the effect of her mental impairment without

26  consideration of her substance abuse.  As stated by Dr. Canty, these other sources do not appear

7

1    to have reviewed her diagnosis in several years, and were merely providing medication in an

2    automatic manner.  For example, Yolo County ADMH diagnosed plaintiff with schizoaffective

3    disorder and anxiety/depression and although she tested negative for certain drugs, it was not

4    noted how recently she had abused them.  The clinic's purpose was to provide education

5    concerning substance abuse, counseling and random drug screenings.  (Tr. at 422, 425.)  There

6    was no plan to separate out plaintiff's mental illness from the impairments caused by her

7    substance abuse.  These reports are not signed and it is not known who made these diagnoses.

8    Other records from Yolo County ADMH reflect prescriptions for serious medication such as

9    Prolixin[8] and Seroquel[9]; however, there appears to be no review of plaintiff's symptoms or

10    diagnosis at these times, but merely the dispensing of the prescription.  See e.g. tr. at 191-93.

11    These records bear out Dr. Canty's opinion regarding plaintiff's treatment and the lack of

12    assessment of her condition.

13          When there was undertaken an in depth assessment of plaintiff's condition, it

14    appears that it was completed by a clinician who assessed plaintiff, and later reviewed and signed

15    by a psychologist.  This assessment is deserving of less weight because it was written by a

16    clinician who is not considered an acceptable medical source, but only an "other source."  20

17    CFR § 416.913(a), (d)(1) (2008).  For example, Dr. Hudson signed an  intake assessment

18    completed by clinician Kristina Glynn.  (Tr. at 197.)  She interviewed plaintiff, noting her

19    lengthy history of mental illness which was complicated by her drug abuse.  (Tr. at 194.)

20    Plaintiff's substance abuse as of April 5, 2007, included alcohol, sedatives, heroin, amphetamine,

21    marijuana, PCP/LSD, and prescription drugs.  (Id. at 195.)  After conducting a mental status

22    exam wherein it was noted that plaintiff could not concentrate and memorize, or do any serial

23    counting, this "other source" diagnosed schizoaffective disorder bipolar type, cocaine

---

[8]   Prolixin is prescribed for schizophrenia.  www.nami.org.

[9]   Seroquel is used to treat bipolar disorder and schizophrenia.  www.webmd.com

1  dependence, and post traumatic stress disorder.  (Id. at 196-97.)  Plaintiff's GAF was 45.[10]  (Id.)

2  These records also do not address the issue here, as they assessed substance abuse along with

3  mental illness, and did not discuss plaintiff's condition were she to stop using drugs.  (Id. at 197.)

4         Even where plaintiff was examined directly by a medical doctor, it was primarily

5  or substantially due to substance abuse.  (Tr. at 203.)  Yolo County Jail records consist mostly of

6  chart notes with perfunctory diagnoses including various forms of substance abuse and psychosis

7  due to methamphetamine and cocaine.  (Tr. at 218.)  There appear to be very few mental health

8  assessments undertaken during plaintiff's incarceration.   Where psychiatric assessments were

9  conducted, they did not attempt to determine the residual effects of plaintiff's mental health when

10  the substance abuse is factored out.  They only included cursory discussion of the mental health

11  aspects of plaintiff's impairment, with focus on the fact that her mental condition was due to

12  substance abuse.  (Id. at 218) (psychosis secondary to methamphetamine and cocaine), 247

13  (bipolar disorder, schizophrenia), 260 ("still detoxing").  Medication appears to have been

14  administered on an autopilot basis, just as Dr. Canty described.  (Tr. at 225-26.)

15         Although plaintiff was seen by psychiatrists Sett and Sebastian during the time

16  she was in prison and on parole, these specialists only saw her a couple of times.  They also did

17  not consider her mental impairment separately from her drug abuse.  For example, Dr.

18  Sebastian's chart notes were focused on adjusting plaintiff's prescription medications to reduce

19  her side effects.  (Tr. at 318-19.)  Dr. Sett apparently saw plaintiff only twice also.  He reported

20  some drug seeking behavior, some difficulty in memory and recalling significant dates, and some

21  disorganization.   He diagnosed depressive disorder NOS with psychotic features, amphetamine

22  and cocaine dependence, and alcohol abuse in remission.  GAF was 50 on April 6, 2005.  (Tr. at

23  314.)  On October 25, 2005, his diagnosis was depressive disorder, NOS, rule out schizoaffective

24

25     [10]   According to the DSM IV, a GAF of 41-50 indicates: "Serious symptoms (e.g.,
   suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in
26  social, occupational, or school functioning (e.g., no friends, unable to keep a job)."

9

disorder, and rule out "methamphetamine induced psychotic." (Id. at 320.)

It is not possible to draw an inference of lack of drug use during incarceration in order to determine whether her addiction was a contributing factor material to her disability, as plaintiff admitted to using methamphetamine while housed at Yolo County Jail. Her reports of amounts used and frequency of use were vague. (Id. at 344.)

The records of Dr. Graman, another treating psychiatrist, indicate only that he adjusted plaintiff's medications, and did not make a specific diagnosis or predict her limitations without drug use. (Tr. at 198-203, 404, 406.)

One of the few in-depth statements on plaintiff's condition was a form completed on June 26, 2007 by Dr. Caldwell. He found that plaintiff had a fair ability to understand and remember very short and simple instructions but a poor ability to understand and remember detailed and complex instructions. Plaintiff's ability to carry out instructions, concentrate and work without supervision was poor. This assessment was due to plaintiff's mental illness. (Tr. at 436.) Plaintiff's ability to interact with others was found to be fair, due to her being distracted and unable to pick up on social cues. She had a fair ability to adapt to changes in the workplace and a poor ability to be aware of normal hazards and react appropriately. Her prognosis was poor to fair. (Id. at 437.) This form appears to be the only report signed by this physician. He did not separate out which limitations would remain if plaintiff stopped her substance abuse. Because it does not appear that he had a history of treating plaintiff, he most likely based these limitations on his assessment of plaintiff's behavior on that particular day. Further, his opinion as to plaintiff's functional abilities was consistent with that of Dr. Canty, and therefore the ALJ was not required to reject it.

All circuits which have considered the issue of drug or alcohol addiction as a contributing factor material to the finding of disability hold that the burden of proving a disability would exist in the absence of drug or alcohol abuse is squarely on the plaintiff. Parra v. Astrue, 481 F.3d 742, 748 (9th Cir. 2007); Doughty v. Apfel, 245 F.3d 1274, 1275-76 (11th Cir. 2001);

1   Mittlestedt v. Apfel, 204 F.3d 847, 852 (9th Cir. 2000); Brown v. Apfel, 192 F.3d 492, 298 (5th

2   Cir. 1999).  The Ninth and other circuits so holding, have done so *after* the 1996 pronouncement

3   in Emergency Message 96200 issued by the Social Security Administration which states in part:

4   "[w]hen it is not possible to separate the mental restrictions and limitations imposed by DAA and

5   the various other mental disorders shown by the evidence, a finding of 'not material' would be

6   appropriate."  http://policy.ssa.gov.  Parra rejected a related emergency message, numbered 96-

7   94, which stated in part: "where the MC/PC cannot project what limitations would remain if the

8   individuals stopped using drugs/alcohol, the MC/PC 'should record his/her findings to that

9   effect' and 'the DE will find that DAA is not a contributing material factor to the determination

10  of disability.'"  Id. at 749, n. 5.  The court reasoned that internal agency documents are not

11  binding, and cannot be judicially enforced.  Id.  Furthermore, the agency pronouncements

12  contradicted the purpose of the Contract with America Advancement Act which was "to

13  discourage alcohol and drug abuse, or at least not to encourage it with a permanent government

14  subsidy."  Id., *quoting* Ball v. Massanari, 254 F.3d 817, 824 (9th Cir. 2001).  As the court

15  succinctly reasoned:

16          An alcoholic claimant who presents inconclusive evidence of
            materiality has no incentive to stop drinking, because abstinence
17          may resolve his disabling limitations and cause his claim to be
            rejected or his benefits terminated.  His claim would be guaranteed
18          only as long as his substance abuse continues - a scheme that
            effectively subsidizes substance abuse in contravention of the
19          statute's purpose.

20  Id. at 750.

21          Finally, the court added that a plaintiff is in the best position to know whether she

22  would still be disabled in the absence of substance addiction.  Id. at 748.  Therefore, these

23  emergency teletypes have been superseded by Parra and others.

24          Of note is the opinion of medical experts in the field of substance abuse who have

25  testified in other cases that "substance abuse induced mental disorders 'do not end when

26  someone goes into remission' and the length of remission is relative to the materiality of drug

11

1    addiction on [plaintiff's] mental impairments." <u>Morehead v. Astrue</u>, 2008 WL 3891464, *7

2    (E.D. Wash. 2008).  Although plaintiff in that case had struggled with addiction to a different

3    substance (heroin) for thirty years, the expert testified that her anxiety and depression were

4    related to her use and her intermittent withdrawal after every episode of use.  <u>Id.</u>  Here, the ALJ's

5    conclusion that claimant's substance use disorder is a contributing factor material to the

6    determination of disability, based on consultant Canty's opinion, is consistent with the expert

7    opinion in <u>Morehead</u>.

8              Although the ALJ did not specifically reject the other medical evidence of record,

9    his disregard of it was appropriate.

10              Historically, the courts have recognized conflicting medical
              evidence, the absence of regular medical treatment during the
11             alleged period of disability, and the lack of medical support for a
              doctor's report based substantially on a claimant's subjective
12             complaints as specific, legitimate reasons for disregarding the
              treating physician's opinion. <u>Flaten</u>, 44 F.3d at 1463-64; <u>Fair v.
13             Bowen</u>, 885 F.2d 597, 604 (9th Cir.1989). The ALJ is not required
              to accept the opinion of a treating or examining physician if that
14             opinion is brief, conclusory and inadequately supported by clinical
              findings. <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir.2002).

15

16   <u>Id.</u> at *5.

17              In fact, the record was not complete enough for him to render a decision based on

18   it, but rather it was necessary and permissible under the regulations for him to order a

19   consultative examination because the information he needed, the effect of removing alcohol and

20   drugs from the equation, was not readily available from the records of plaintiff's treating sources,

21   if they could be so labeled.  <u>See</u> 20 C.F.R. § 416.919a(a)(1).  Because the task of determining

22   what limitations would remain in the absence of substance abuse is necessarily hypothetical and

23   therefore more difficult than when the plaintiff has stopped using for a long period, it was

24   incumbent upon the ALJ to obtain a consulting opinion on this very specific issue.  <u>See</u>

25   <u>Brueggemann v. Barnhart</u>, 348 F.3d 689, 695 (8th Cir. 2003).

26   \\\\\

1    The ALJ adequately explained his reasons for relying on the opinion of Dr. Canty,

2  that it was well supported by the objective findings and consistent with the totality of the record.

3  (Tr. at 17.)   All of the other medical sources who treated plaintiff focused on the effects of her

4  substance addiction, and most of them simply documented her complaints and adjusted her

5  medications.  As such, it was reasonable for the ALJ to rely on the only opinion of record which

6  focused on the disabling effects of plaintiff's mental impairment in the absence of her addictions.

7   It should additionally be noted that the ALJ found plaintiff to be not credible in regard to her

8  statements about the intensity, persistence and limiting effects of her symptoms.  (Tr. at 20.)

9  Plaintiff has not disputed the ALJ's credibility finding and therefore it stands.

10    Substantial evidence supports the ALJ's reliance on the opinions of Drs. Canty,

11  Schnitzler and Hilliard.

12  CONCLUSION

13    Accordingly, IT IS ORDERED that plaintiff's Motion for Summary Judgment is

14  denied, the Commissioner's Cross Motion for Summary Judgment is granted, and judgment is

15  entered for the Commissioner.

16  DATED: 01/08/09                              /s/ Gregory G. Hollows

17                                                                 _____
                                                          GREGORY G. HOLLOWS
18  GGH/076                                            U.S. MAGISTRATE JUDGE
    Sebastian2746.ss.wpd
19

20

21

22

23

24

25

26